IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

ARLENE CALDWELL,

        Plaintiff,

V.                                                CIVIL ACTION NO. 3:04-0487

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

## FINDINGS AND RECOMMENDATION

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed her applications on October 18, 2002, alleging disability commencing October 16, 2002, as a consequence of rheumatoid arthritis. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was fifty-two years of age and had obtained a high school education. Her past relevant employment experience consisted of work as an in-home caregiver . In his decision, the administrative law judge determined that plaintiff suffers from "rheumatoid arthritis," an impairment he found severe. Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge determined that she had the residual functional capacity for a limited range of medium level work. On the basis of this finding, and relying on Rule 203.22 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

Deficiencies in the record will require remand for further proceedings. Plaintiff suffers from rheumatoid arthritis and has a history of diagnosis and treatment for the disease predating November of 2001. Her primary care physician, Dr. Sandra Copley, observed on November 6, 2001, that plaintiff could hardly walk and was experiencing progression of the disease. She referred plaintiff to Ralph Webb, M.D., a specialist in rheumatology. His reports document findings of numerous subcutaneous nodules on the wrists, hands, fingers, forearms and ankles; synovial thickening and enlargement of the wrists and finger joints resulting in an inability to fully extend the fingers; and, decreased grip strength. Tenderness and warmth were also observed in various joints on occasion. Plaintiff reported having morning stiffness in her hands lasting from one to two hours as well as continued pain, and Dr. Copley's reports reflect her repeated observations that plaintiff was experiencing significant pain due to her condition.

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 3.

Dr. Webb prescribed a number of different medications to treat plaintiff's symptoms but without much success.[3] While the administrative law judge, in assessing plaintiff's credibility, noted that her symptoms were improved with one of these medications, Methotrexate, which was administered by injection in mid-2003, the medical reports reflect only a July 17, 2003 note by Dr. Copley that plaintiff thinks these injections "might be helping a little," hardly a basis for concluding that plaintiff was improved due to this medication. As the administrative law judge also noted, plaintiff stopped taking these injections a short time later because she felt the medication was causing menstrual irregularity.

The only other evidence relative to plaintiff's health is a report of a consultative physical exam performed by Mark Burns, M.D., on January 9, 2003, wherein he notes that, with the exception of "the deformities" caused by large rheumatoid nodules on both wrists and ankles, plaintiff's exam was "within normal limits." Based on his exam findings, or the lack thereof, he expressed the view that plaintiff could perform "activities involving sitting, standing, moving about, lifting, carrying, handling objects, hearing, seeing, speaking and traveling."

Despite having two physicians who provided good documentation of plaintiff's treatment and of their exam findings, findings which were never "within normal limits,"[4] there is

---

[3] It is observed that several of these medications, such as Imuran (Azathioprine), Enbrel and Neoral, are indicated for the treatment of moderate to severe cases of rheumatoid arthritis and are used when other treatments have failed. See, Attorney's Dictionary of Medicine at A-653, I-53 (Imuran); Physician's Desk Reference 59th Ed. at 580 (Enbrel) and 2348 (Neoral).

[4] The administrative law judge characterizes the objective findings in the record as "mild and mostly transient." Not only does the evidence not support such a conclusion, in making it, he appears to be acting in a medical rather than judicial capacity and resolving issues beyond his area of expertise. Tyler v. Weinberger, 409 F.Supp. 776, 788 (E.D. Va. 1976); Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

no indication that the administrative law judge sought an opinion from them as to what types of work-related activities plaintiff could perform on a consistent basis. Because of his unsupported conclusions about the nature of the objective findings, the administrative law judge also did not try to incorporate any of the limitations noted repeatedly by Dr. Webb into his residual functional capacity findings.[5] Instead, the administrative law judge relied on the report of Dr. Burns, who saw plaintiff on one occasion and expressed a vague opinion as to her abilities. He also relied on the opinions of the state agency medical advisors, who concluded that plaintiff was capable of a full range of medium level work, which is the residual functional capacity ultimately adopted by the administrative law judge. These physicians, in addition to never examining or treating plaintiff, also completed their assessments in January and April of 2003, before a significant amount of medical evidence was received. In fact, the earlier evaluator's notes reflect he considered only consultative examination findings in forming his opinions while the later examiner refers to Dr. Webb's findings only from February and March of 2003.

        Given these circumstances, the Court concludes that the administrative law judge's findings as to plaintiff's residual functional capacity lack substantial evidentiary support. Remand is therefore necessary for a reevaluation of this issue after obtaining opinions from Drs. Copley and Webb. As treating physicians, they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings

---

[5] Such limitations included impaired grip strength and decreased range of motion of the fingers. Additionally, the reports from both this physician and Dr. Copley suggest plaintiff would also experience probable concentration impairment due to pain, especially with use of the hands.

alone or from reports from individual examinations, <u>such as consultative examinations</u> or brief hospitalizations." 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2). (Emphasis added). The parties should also be permitted to submit additional evidence on remand.

## **RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that this case be remanded to the Commissioner for further proceedings consistent with these Findings and Recommendation.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED: July 22, 2005

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE